Michael W. Stocker (179083)
Reed R. Kathrein (139304)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
mikes@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CHAMBERLAIN, on behalf of himself and all other similarly situated <br><br> Plaintiff, <br><br> v. <br><br> TESLA INC., and ELON MUSK, <br><br> Defendants. | No. <br><br> **CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.      NATURE OF THE ACTION ................................................................................1

II.     JURISDICTION AND VENUE ..........................................................................2

III.    PARTIES .............................................................................................................3

IV.     SUBSTANTIVE ALLEGATIONS .....................................................................3

        A.      Background.............................................................................................3

        B.      Materially False and Misleading Statements Issued During the Class Period ...........3

V.      PLAINTIFF'S CLASS ACTION ALLEGATIONS ............................................6

VI.     NO SAFE HARBOR ...........................................................................................8

COUNT I VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MATERIAL FALSE STATEMENTS AND OMISSIONS AGAINST ALL DEFENDANTS ..................................................................................................8

COUNT II VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MARKET MANIPULATION AGAINST ALL DEFENDANTS ..............................10

COUNT III VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST DEFENDANT MUSK...........................................................................................11

PRAYER FOR RELIEF ....................................................................................................11

DEMAND FOR TRIAL BY JURY ...................................................................................12

Plaintiff Willian Chamberlain ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tesla, Inc. ("Tesla" or the "Company"), analysts' reports and advisories about the Company, and other public information.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or sold securities of Tesla between August 7, 2018 and August 10, 2018, both dates inclusive (the "Class Period") and suffered damages as a result of the statements and ommissions alleged herein.  Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     Tesla, Inc. designs, manufactures, and sells high-performance electric vehicles and electric vehicle powertrain components.  The Company owns its sales and service network and sells electric powertrain components to other automobile manufacturers. It primarily offers sedans and sport utility vehicles.

3.     Founded in 2003, the Company was formerly known as "Tesla Motors, Inc." and changed its name to Tesla, Inc. in February 2017.  Tesla is headquartered in Palo, Alto, California, and its stock trades on the NASDAQ Global Select market under the ticker symbol "TSLA."

4.     Throughout the Class Period, Defendants materially misled investors as to the following material facts:  (i) contrary to Tesla CEO Elon R. Musk's statements that funding had been "secured" to take Tesla private at $420 per share, no such funding had been secured; (ii) contrary to

Musk's statement that investor support to take Tesla private "is confirmed", there was no such confirmation.  As a result, the public statements by Defendants herein were materially false and misleading at all relevant times.

5.      On August 7, 2018, Defendant Elon R. Musk stated on Twitter:  (1) "Am considering taking Tesla private at $420"; (2) "Funding secured"; (3) "Shareholders could either to sell at 420 or hold shares & go private"; and, (4) "Investor support is confirmed."

6.      This news drove the price of Tesla shares up as much as $45.47, or up as much as about 13%, during intraday trading before closing at $379.57 on August 7, 2018.

7.      Since then, both the U.S. Securities and Exchange Commission and Tesla's board of directors are reportedly investigating the truth of Musk's tweets, and whether in fact funding had been secured.  Major investors and banks have unanimously stated that they are aware of no such funding.  In the face of these investigations and demand for support for the false statements set forth above, Defendants have remained silent, evidencing the lack of support for the false statements and driving the price of Tesla securities down to near pre-tweet levels, with its common stock closing down at $355.49 on August 10, 2018.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous increase in the market value of the Company's common shares, Plaintiff and other Class members who purchased or sold securities of Tesla have suffered significant losses and damages.

## II.      JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Tesla's principal executive offices are located within this Judicial District.

COMPLAINT - 2
Case No.:
010768-11 1055852 V1

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

### III.     PARTIES

13.     Plaintiff, William Chamberlain, as set forth in the accompanying Certification, purchased shares of Tesla stock in the Class Period and was damaged upon certain the revelation of the alleged corrective disclosure.

14.     Defendant Tesla is incorporated in Delaware, and the Company's principal executive offices are located at 3500 Deer Creek Road, Palo Alto, California 94070. Tesla's common stock trades on the NASDAQ under the ticker symbol "TSLA."

15.     Defendant Elon R. Musk ("Musk") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

### IV.     SUBSTANTIVE ALLEGATIONS

**A.     Background**

16.     Tesla Inc. designs, manufactures, and sells high-performance electric vehicles and electric vehicle powertrain components.  The Company owns its sales and service network and sells electric powertrain components to other automobile manufacturers. It primarily offers sedans and sport utility vehicles.

17.     The Company manufactures its vehicle products primarily at its facilities in Fremont, California, Lathrop, California, Tilburg, Netherlands and its Gigafactory 1 outside of Reno, Nevada.

18.     Defendant Musk has a long-running public battle with Tesla bearish investors who have been critical of Tesla's finances and/or contend its sales targets are unreasonable.

**B.     Materially False and Misleading Statements Issued During the Class Period**

19.     The Class Period begins on August 7, 2018, when Musk tweeted several messages using his Twitter account, which has 22.3 million followers and was picked up immediately by Bloomberg and other news outlets and repeated.

20.     Musk tweeted, among other messages:

COMPLAINT - 3
Case No.:
010768-11 1055852 V1

(a)     Musk's 9:48 a.m. tweet:  "Am considering taking Tesla private at $420. Funding secured[]";

(b)     Musk's 12:13 p.m. tweet:  "Shareholders could either to [*sic*] sell at 420 or hold shares & go private"; and,

(c)     Musk's 1:36 p.m. tweet:  "Investor support is confirmed."

21.     In addition to these public statements, Musk continued to publicly tweet to- and with-investors about his purported plan to take Tesla private at $420.00 per share.

22.     Defendants' conduct artificially drove the price of Tesla shares up as much as $45.47 from their August 6, 2018 closing price ($341.99), or as much as 13%, before closing at $379.57 on August 7, 2018.

23.     Defendants' statements were materially false and misleading when made because, in part, as discussed more fully below, even Tesla's board of directors has no evidence that funding has been secured for what has been reported could be the largest corporate buyout in history and require securing tens of billions of dollars for a company whose debt ratings currently occupy junk status.

24.     Defendants' statements were materially false and misleading when made because, no funding or investor support had been secured.  Indeed, the Company's own Board of Directors was apparently unaware of what funding Musk was referring to.  Almost as soon as Musk issued his statement, analysts including former SEC Chairman Harvey Pitt questioned his actions.  Pitt noted that "Elon Musk could face civil and criminal penalties if it's found that he didn't secure financing at the time of his tweet about taking Tesla private, former SEC chair Harvey Pitt says."

25.     No later than August 8, 2018, news outlets began reporting the SEC commenced an investigation of Defendants' public statements.

26.     By way of example only, on August 8, 2018 *The Wall Street Journal* reported in part: "U.S. regulators are asking Tesla Inc. whether Chief Executive Elon Musk was truthful when he tweeted that he had secured funding for what would be the largest-ever corporate buyout, people familiar with the matter said."

27.     *Bloomberg* reported on August 9, 2018:

The U.S. Securities and Exchange Commission is intensifying its scrutiny of Tesla Inc.'s public statements in the wake of Elon Musk's

> provocative tweet Tuesday about taking the electric-car company private, according to two people familiar with the matter.
>
> * * *
>
> Now, attorneys from that office are also examining whether Musk's tweet about having funding secured to buy out the company was meant to be factual, according to one of the people.
>
> * * *
>
> The scrutiny adds to pressure on Musk, who has a history of setting sales targets that bulls consider to be aggressive and bears contend are unrealistic. The question for regulators is whether any of his public statements or the company's run afoul of federal securities laws. Generally, the SEC considers statements by executives to be material information that have to be true.

28.    On August 9, 2018, *Reuters* reported Tesla's Board of Directors is reportedly investigating whether Musk's so-called funding is "secured." The *Reuters* article states in part:

> Tesla Inc.'s (TSLA.O) board of directors is seeking more information from CEO Elan Musk about how his plan to take the U.S. electric car maker private for $72 billion will be financed, according to people familiar with the matter.
>
> The board's request for more details adds to the scrutiny that Musk's proposal is facing from investors and regulators.
>
> The U.S. Securities and Exchange Commission has already contacted Tesla to ask about Musk's assertion on Twitter that funding for his proposed deal was "secured", the Wall Street Journal first reported on Wednesday.

29.    As reported by Fortune, since that initial tweet, Musk has offered no evidence to back up the statement. Nor has anyone stepped forward publicly—or privately—to say they're behind the plan. People with or close to 15 financial institutions and technology firms who spoke with Fortune on the condition of anonymity said they weren't aware of financing having been locked in before Musk's posts. As a result of Defendants' of these disclosures, and Defendants' complete silence and failure to confirm the veracity of their statements, Tesla's stock price has plummeted back down to near the pre-tweet stock prices on August 7, 2018, closing at $355.49 on August 10, 2018. As a result, Plaintiff and other Class members have suffered significant losses and damages.

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or sold Tesla securities during the Class Period (the "Class")and were damaged by Defendants' statements and/or omissions as alleged herein.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tesla securities were actively traded on the NASDAQ and other exchanges.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the

financial condition, business, operations, and management of Tesla;

- whether Defendants caused Tesla to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tesla securities during the Class Period were artificially inflated or artificially depressed because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tesla securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company's securities traded on the NASDAQ and other exchanges, and the Company was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Tesla securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## VI.     NO SAFE HARBOR

39.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Tesla who knew that those statements were false when made.

## COUNT I

**VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MATERIAL FALSE STATEMENTS AND OMISSIONS AGAINST ALL DEFENDANTS**

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42.     During the Class Period, Defendants directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading.

43.     Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiff and other investors, as alleged herein; and (ii) cause Plaintiff and other investors to purchase or sell Tesla securities at artificially high or low prices, respectively.

44.     In furtherance of their plan, scheme and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceipt upon the buyers and sellers of Tesla securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal their true intentions with respect to having funding "secured" to support taking Tesla private at $420.00 per share and "[i]nvestor support is confirmed."

47.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to falsely persuade purchasers and sellers of Tesla securities that funding is "secured" and "[i]nvestor support is confirmed."

48.     Defendants had actual knowledge of the misrepresentations and omissions of material facts above.

49.     Defendants made their material misrepresentations and/or omissions knowingly and for the purpose of concealing their true intentions.

50.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, the price of Tesla shares was artificially inflated thereby damaging Plaintiff and the Class.

51.     Defendants' misrepresentations and omissions caused Plaintiff's and the Classes losses.  In ignorance of the true facts, and relying directly or indirectly on the false and misleading statements made by Defendants and described herein, or upon the integrity of the markets in which Tesla's securities trade, and/or in the absence of material adverse information that was known to Defendants, but not disclosed in public statements by Defendants during the Class Period.  Plaintiff and the Class purchased shares in the Class Period and at the time of Defendants' misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true.

52.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered substantial damages in connection with his respective their purchases or sales of Tesla securities during the Class Period.

**COUNT II**

**VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MARKET MANIPULATION AGAINST ALL DEFENDANTS**

54.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged in manipulative acts that resulted in a short squeeze that drove the price of Tesla shares to artificially high levels on and between August 7, 2018 through at least August 10, 2018.

56.     Defendants' market manipulation caused Plaintiff's losses.

57.     At the time of Defendants' manipulation, Plaintiff was ignorant of Defendants' manipulative acts.

58.     Defendants had actual knowledge of the material facts alleged herein, and knowingly intended to deceive Plaintiff for the purpose of manipulating the price of Tesla securities.

59.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b5-1.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered damages in connection with their trades.

### COUNT III

**VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
AGAINST DEFENDANT MUSK**

61.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, Musk participated in the operation and management of Tesla, and conducted and participated, directly and indirectly, in the conduct of Tesla's business affairs.  Because of his senior position, he knew the adverse non-public information regarding the Company's consideration of any going private transaction, the price (if any), whether funding was secured and whether investor support is confirmed.

63.     As an officer and director of a publicly owned company, Musk had a duty to disseminate accurate and truthful information with respect to any major corporate transaction and to correct promptly any public statements issued by Tesla or him which were- or became- materially false or misleading.

64.     Because of his position of control and authority as a senior officer, Musk was able to, and did, control the contents of the various reports, press releases, public filings and tweets which he and/or Tesla disseminated in the marketplace during the Class Period.  Throughout the Class Period, Musk exercised his power and authority to cause Tesla to engage in the wrongful acts complained of herein.  Musk therefore was a "controlling person" of Tesla within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which manipulated the market price of Tesla common shares and other securities.

65.     By reason of the above conduct, the Musk is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tesla.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 10, 2018                    Respectfully submitted,

/s/ Reed R. Kathrein
Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
mikes@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Plaintiff*