UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALMAN ISAACS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELON MUSK, et al.,<br><br>Defendants. | Case No. 18-cv-04865-EMC<br><br>**RELATED TO**<br><br>Case No. 18-cv-04876-EMC<br>Case No. 18-cv-04912-EMC<br>Case No. 18-cv-04939-EMC<br>Case No. 18-cv-04948-EMC<br>Case No. 18-cv-05258-EMC<br>Case No. 18-cv-05463-EMC<br>Case No. 18-cv-05470-EMC<br>Case No. 18-cv-05899-EMC<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTIONS TO CONSOLIDATE; AND (2) GRANTING PLAINTIFF LITTLETON'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVING PLAINTIFF LITTLETON'S SELECTION OF LEAD COUNSEL**<br><br>Docket Nos. 40-41, 45-47, 64, 71, 74, 80 |

The above-referenced cases are securities fraud class actions. They concern allegedly false statements made by Tesla's CEO Elon Musk that he had secured funding to take the company private. According to plaintiffs, Mr. Musk's statements led to a trading frenzy that drove up the value of Tesla's shares.

Currently pending before the Court are motions to consolidate and competing motions to appoint Lead Plaintiff and approve selection of Lead Counsel. Originally, nine competing motions were filed but two of the motions have since been withdrawn or were effectively

withdrawn. This still leaves, however, seven competing motions.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the requests to consolidate. The Court further **GRANTS** Glen Littleton's motion for appointment as Lead Plaintiff and approves his selection of Lead Counsel. All other motions to appoint are **DENIED**.

## I. MOTIONS TO CONSOLIDATE

The Private Securities Litigation Reform Act ("PSLRA") provides that a decision on consolidation should be made before a Lead Plaintiff is selected. *See* 15 U.S.C. § 78u-4(3)(B)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [15 U.S.C. §§ 78a *et seq.*] has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) [*i.e.*, selection of lead plaintiff] until after the decision on the motion to consolidate is rendered.").

Federal Rule of Civil Procedure 42 governs consolidation. The rule provides that, if actions before a court "involve a common question of law or fact," then the court may

    (1)    join for hearing or trial any or all matters at issue in the actions;

    (2)    consolidate the actions; or

    (3)    issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

Here, there are both common questions of law and fact in the various related cases. All of them concern the allegedly false statement that Mr. Musk made about securing funding to take Tesla private. Moreover, no party (including Defendants) has opposed consolidation. Accordingly, the Court grants the consolidation requests. The requisites of Rule 42 are satisfied.

## II. COMPETING MOTIONS TO APPOINT LEAD PLAINTIFF

A. <u>Early Notice to Class Members</u>

Before addressing the competing motions to appoint Lead Plaintiff, the Court addresses first the PSLRA's requirement that early notice be provided to class members. *See* 15 U.S.C. §

2

78u-4(3)(A).

In the instant actions, early notice to the class members has been sufficiently provided. Counsel in the first-filed suit (*Isaacs*, No. C-18-4865) had a notice published in a wire service (PR Newswire). *See* Docket No. 71-2 (King Decl., Ex. A) (PR Newswire notice). The notice was published within 20 days after the filing of the complaint. In fact, the complaint was filed and the notice published on the same day – *i.e.*, August 10, 2018. The notice advised the putative class about the pendency of the lawsuit and the nature of the claims (*i.e.*, that Tesla's Chairman and CEO Elon Musk issued "false and misleading statements regarding Musk taking the Company private"). Docket No. 71-2 (King Decl., Ex. A). While the notice did not identify the putative class period per se, it identified the date Mr. Musk issued the allegedly false statement, *i.e.*, August 7, 2018. Finally, the notice advised the putative class that, "[i]f you wish to serve as lead plaintiff for the Class, you must file a motion with the Court no later than October 9, 2018, which is the first business day on which the District Court . . . is open that is 60 days after the publication date of August 10, 2018." Docket No. 71-2 (King Decl., Ex. A).

B.  Appointment of Lead Plaintiff

The parties competing for the position of Lead Plaintiff are identified below. They are ordered from greatest to smallest total asserted loss. *See* 15 U.S.C. § 78u-4(3)(B)(iiii) (providing that "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure").

(1) Tempus International Fund and Opportunity Unique Fund Inc.

(2) Tesla Investor Group (five persons/entities).[1]

(3) Bridgestone Investment Corporation Ltd.

(4) Glen Littleton.

---

[1] The persons/entities making up the group are as follows: (1) Andrew E. Left; (2) PROtecto Informatikai Szolgaltato Korlatolt Felelossegu Tarsasag; (3) Thierry Boutin; (4) Dr. Abrar Shirazi; and (5) Vilas Capital Management, LLC.

3

(5) Dany David.

(6) James Johnson.

(7) FNY Investment Advisers, LLC.

1. <u>Tempus International Fund and Opportunity Unique Fund Inc.</u>

Tempus International Fund and Opportunity Unique Fund Inc. ("Tempus/OUF") claims that its total loss is more than $15.8 million. The Court declines to appoint Tempus/OUF as Lead Plaintiff for several reasons.

First, Tempus/OUF has overstated its loss. Tempus/OUF calculated its loss – as a short seller – based on the difference between the proceeds from the short sale and the price to cover the short sale. But the damage to Tempus/OUF should likely be the artificial inflation of the Tesla common stock only due to the asserted fraud. Any rise in Tesla stock prices (and resulting loss on short sale) prior to the fraud may not be causally related to the fraud. It appears that, just before Mr. Musk's tweet, Tesla's stock price was already $356.82; therefore, "Tempus/OUF damages per share, based on stock inflation, arguably should not be more than $19.13 per share ($375.9503 – $356.82) for total damages of around $3.386 million (177,022 [shares] x $19.13)." Docket No. 113 (Opp'n at 5).

Second, Tempus/OUF will likely be subject to unique defenses – both because of OUF's history and the history of Tempus/OUF's founder, Daniel Dantas – that may well become the focus of the litigation to the detriment of the class.

Finally, the Court has concerns regarding the adequacy or typicality of Tempus/OUF because it is a short seller only (*i.e.*, it did not also have a long position in common stock and it did not also trade in options)[2] and because its cover purchases for its short sales took place on one date only – *i.e.*, August 7, 2018 – while the class period extends to at least August 17, 2018. While events after August 7, 2018, including partial disclosures, may affect the damages claims of, *e.g.*,

---

[2] At the hearing, some moving parties argued that there are clear conflicts of interest among the different types of investors. Other moving parties argued that there are no real conflicts, at least as to liability, but admitted that there may be conflicts as to damages if there is a limited fund available (a prospect that is plausible whether or not the case settles). The Court must give due consideration to the potential for conflict.

4

1 long investors, they may be irrelevant to Tempus/OUF's damages claim.

    2.     <u>Tesla Investor Group</u>

Tesla Investor Group ("TIG") claims a total loss of more than $4.4 million. The Court declines to appoint TIG for the following reasons.

First, even though that more than one person/entity (*i.e.*, a group) can be appointed a lead plaintiff, and a pre-litigation relationship amongst group members is not required, *see, e.g.*, *In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *19-20 (N.D. Cal. Aug. 17, 2001), courts have also been skeptical of "artificial" groups. For example, in *In re Network Associates Inc. Securities Litigation*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), Judge Alsup held that a "'group' of unrelated investors with no decisionmaking structure and no connection other than counsel" could not qualify as a candidate for lead plaintiff. *Id.* at 1018; *see also Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *25 (N.D. Cal. Aug. 22, 2008) (stating that "ignoring the basis of the group formation and appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation").

In the instant case, the "joint declaration" submitted by the TIG members indicates that TIG is a similar artificial group. The declaration reflects that the TIG members are unrelated and were introduced to one another by their lawyers (even if at their request), *see also* Docket No. 111 (David Opp'n at 15) (noting that the members are "strewn across the globe – Hungary, Europe and the Middle East, Chicago, and California"), and, although the members suggest that they will be able to work together well, efficiently, and so forth, there is nothing concrete to back that up. *See, e.g.*, Docket No. 51-4 (Wagstaffe Decl., Ex. D) (Joint Decl. ¶ 7) (asserting that "[w]e are a small, cohesive group" without explaining what makes the group "cohesive"). It appears that the members participated in only one joint call prior to filing the motion for appointment. *See* Docket No. 51-4 (Wagstaffe Decl., Ex. D) (Joint Decl. ¶ 10) (asserting that, "[a]s part of our efforts to explore working together, on October 7, 2018, we participated in a joint conference call"). Also, the decisionmaking structure does not appear to be robust. *See* Docket No. 51-4 (Wagstaffe Decl., Ex. D) (Joint Decl. ¶¶ 11, 15) (testifying that "we will exercise joint decision-making and work

together in this litigation to actively monitor the activities of counsel"; that "we do not anticipate that any disagreements between us will arise and agree to make all efforts, in good faith, to reach consensus with respect to all litigation decisions"; and that, if there are disagreements, "we agree to put the decision at issue to a vote and to take the course of action favored by the majority of our group's members").

Second, TIG will likely be subject to unique defenses – both because of Andrew Left's history and Thierry Boutin's history[3] – that may well become the focus of the litigation to the detriment of the class. The Court acknowledges TIG's suggestion that the group may be broken apart if the Court has concerns about any specific member. But that suggests that the group is artificial and should not have been brought in the first place.

### 3. Bridgestone Investment Corporation, Ltd.

Bridgestone Investment Corporation, Ltd. ("Bridgestone") maintains that its total asserted loss is more than $3.8 million. The Court declines to appoint Bridgestone as Lead Plaintiff for the following reasons.

First, the Court has concerns regarding the adequacy or typicality of Bridgestone. As indicated above, the plaintiffs largely agree that persons/entities in the class should include those who took long positions as well as those who took short positions. Those who took long positions were injured when, *e.g.*, they purchased Tesla securities after the alleged fraud (*i.e.*, when the price of the securities was artificially inflated) and then sold after the truth began to be disclosed. Those who took short positions were injured when, *e.g.*, they covered their short positions by purchasing Tesla securities after the alleged fraud (again, when the price of the securities was artificially inflated). Bridgestone held long positions – both in common stock and options – but does not appear to have held any short positions.

Second, the Court has some concern as to whether Bridgestone may have overstated its loss – or at least questions about its loss could well become a unique defense that would preoccupy it. As explained by Glen Littleton, one of the other parties seeking appointment,

---

[3] Mr. Left's history will certainly be a focus given that he is TIG's "spokesperson."

> a substantial part of Bridgestone's total losses of $3,869,744.20 stem primarily from the $1,641,391 in losses it incurred from buying Tesla January 2019 $450 call options [on August 7, 2018]. [Dkt.] No. 52-5. These transactions, however, subject Bridgestone to a unique defense based on this class definition. Specifically, this loss chart (Dkt. 52-5) is proof that Bridgestone purchased the January 2019 $450 call options by not relying upon the first materially false and/or misleading statement issued by Musk on August 7, 2018 at 12:48 p.m. EDT stating that "Am considering taking Tesla private at $420. Funding secured." *See* Dkt. No. 46, at 3. If Bridgestone was relying upon the content of Musk's 12:48 p.m. tweet, it would not have purchased Tesla January 2019 $450 call option contracts because Musk's tweet was clear that he was only considering to take Tesla private at *$420* per share. It simply makes no sense that Bridgestone would have invested $2,156,496 to buy January 2019 $450 call option contracts relying on Musk's 12:48 p.m. tweet when they would expire worthless when Musk took Tesla private at $420. In fact, Bridgestone must have expected that Tesla's stock price would surpass $467.85 per share (the exercise price of $450 plus the highest premium paid of $17.85 for these call option contracts).

Docket No. 118 (Reply at 6) (emphasis in original). This is not to say that a causally related loss based on Bridgestone's purchase of the January 2019 call options cannot be proven; but it does make a substantial portion of its loss assertion uncertain for purposes of the pending motions.

####  4. Glen Littleton

Mr. Littleton claims that his total loss is approximately $3.5 million. The Court finds that Mr. Littleton is the most adequate plaintiff for several reasons.

First, Mr. Littleton has the largest clear financial interest of the remaining moving parties. This would be true even if the Court were to credit TIG's argument that Mr. Littleton has overstated his financial loss. Moreover, Mr. Littleton has adequately addressed Mr. David's argument that Mr. Littleton is a net seller/net gainer – *i.e.*, that such is not the case when options and short positions are taken into account. *See* Docket No. 118 (Reply at 9).

Second, Mr. Littleton held interests that cover most of the persons/entities likely to be in the class – *i.e.*, long positions in common stock, long positions in options, and short positions in options – and thus can most adequately represent the class (in light of the differing damages analysis that might apply to each class of investors). Although Mr. Littleton does not appear to have held short positions in common stock, short positions on options appear largely aligned with short positions in common stock. In any event, the only other moving parties who did invest in short positions in stock are Tempus/OUF and Dany David, and, as discussed above, the Court

7

declines to appoint Tempus/OUF. As for Mr. David, his financial interest is far smaller than Mr. Littleton's. Some moving parties have criticized Mr. Littleton because his long position in common stock (as opposed to options) resulted in a relatively small loss compared to others. While this is true, Mr. Littleton sustained a significant loss from his long position in options; the interests of those who held long positions in options and those who held long positions in common stock are sufficiently similar to render his representation adequate as to both.

The Court need not address the remaining moving parties based on its determination that Mr. Littleton is the most adequate plaintiff. His loss is substantially greater than those of the remaining moving parties.[4]

Accordingly, Mr. Littleton is hereby appointed Lead Plaintiff.

C. <u>Selection of Lead Counsel</u>

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(3)(B)(v). Mr. Littleton has selected Levi & Korsinsky, LLP as his counsel. The firm is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions. The Court approves Mr. Littleton's selection of Levi & Korsinsky. Although Levi & Korsinsky did not identify the specific attorneys who will be litigating the case, the Court understands that there will be, at the very least, significant involvement on the part of Adam McCall and Adam Apton (the attorneys named on the briefs) and Nicholas Porritt (the attorney who appeared at the hearing). These attorneys and any others who will work on the litigation, as well as those who will work under any attorney's supervision, are advised that the Court expects the case to be litigated efficiently and that they should comply with the guidelines the Court set forth in *In re Carrier IQ*, Case No. 12-md-2330 EMC (N.D. Cal.) (Docket Nos. 108, 110) (stipulation and order).

---

[4] Because the proposed Lead Plaintiffs largely agree that class members should include those with long positions in common stock, those with short positions in common stock, and options traders, the Court considers the asserted loss in all of these categories. The Court declines to create subclasses to cover the different categories (*i.e.*, have a separate representative for each category) because Mr. Littleton essentially covers the different categories and, at least at this juncture, there is an insufficient showing that there is such an inherent conflict among the different kinds of investors that separate representation is necessary prior to class certification.

### III. CONCLUSION

For the foregoing reasons, the Court orders the Clerk of Court to consolidate the above actions. All future filings shall be made in No. C-18-4865 EMC and shall bear the caption *In re Tesla Inc. Securities Litigation*.

Mr. Littleton is ordered to file a consolidated amended complaint within forty-five (45) days of this order.

This order disposes of Docket Nos. 40, 41, 45, 46, 47, 65, 71, 74, and 80.

**IT IS SO ORDERED**.

Dated: November 27, 2018

_____
EDWARD M. CHEN
United States District Judge